**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GREGORY CARTER, *et al.*,  :
:
    *Plaintiffs*,  :  Case No. 1:25-cv-00019
:
v.  :  Judge Jeffery P. Hopkins
:
TAKODA TRAILS *also known as*  :
MILLER HOLDINGS TAKODA INC.,  :
*et al.*,  :
:
    *Defendants*.  :

## OPINION AND ORDER

Plaintiff Gregory Carter ("Mr. Carter"), as guardian of the estate of his daughter, Lauren Carter (collectively, the "Carters" or "Plaintiffs"), brings this action against Takoda Trails, Miller Holdings Takoda, Inc., Empowering People, Inc., Empowering People Workshop, Inc., Empowering People Management, Inc., Foundations Health Solutions, LLC, and Kurt A. Miller (collectively, "Defendants" or "Takoda Trails") (Am. Compl., Doc. 21).[1] The lawsuit stems from a January 18, 2023, television interview Mr. Carter conducted on the local news. *Id.* ¶ 28. The interview was critical of Takoda Trails, an intermediate care facility ("ICF") located in Butler County, Ohio[2] where his daughter, Lauren Carter ("Lauren"), was residing and receiving personal care services funded through Medicaid under the Individual Options Waiver ("IO Waiver") program. *Id.* ¶¶ 6, 27–28. During the on-camera

---

[1]    Plaintiffs filed the initial Complaint against Defendants on January 17, 2025 (Compl., Doc. 1), which they later amended on April 14, 2025. (Am. Compl., Doc. 21).

[2]    Though it may be confusing, the Court will use the term "Takoda Trails ICF" when referring to the actual facility. At other times, the Court will refer to all Defendants collectively as "Takoda Trails" or "Defendants".

1

interview, Mr. Carter alleged that staff members at Takoda Trails ICF had for over twenty years routinely abused his disabled daughter. *Id.* ¶¶ 28, 33. This interview took place in front of Takoda Trails ICF. *Id.* ¶¶ 29, 31. For Defendants, Mr. Carter's television interview was the tipping point in the parties' already soured relationship. Less than two hours after the interview had concluded, Mr. Carter received a Notice of Discharge letter emailed from CEO Kurt A. Miller (named individually as a defendant in this action) stating that the facility was discharging Lauren in thirty days "[d]ue to [Mr. Carter's] actions." *Id.* ¶¶ 32, 34–35; *see* Pls.' Ex. 1, Doc. 21-1, PageID 170.

The present lawsuit ensued. In the Amended Complaint, Plaintiffs assert claims alleging violations of 42 U.S.C. § 1983 and 42 U.S.C. § 3604 of the Fair Housing Act.[3] Defendants filed a Motion to Dismiss the Amended Complaint (Doc. 22) (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiffs filed a response in opposition (Doc. 26); Defendants replied (Doc. 27). The matter has been fully briefed and is now ripe for decision.

For the reasons stated below, Defendants' Motion (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

Lauren is a disabled woman with cerebral palsy and cortical blindness.[4] Am. Compl., Doc. 21, ¶ 13. Her father, Mr. Carter, plays an active role in Lauren's care and living

---

[3]    The Court notes that Plaintiffs also referred to the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act (*see* Am. Compl., Doc. 21, ¶¶ 1, 156, 345) in the Amended Complaint. Because these claims are reviewed in similar fashion as claims under the Fair Housing Act, the Court's analysis in this Opinion is the same. *See infra* Part III.2.c.

[4]    For purposes of analyzing a motion to dismiss, the Court views as true all factual allegations stated in the Amended Complaint (Am. Compl., Doc. 21). *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

arrangements because she is unable to independently care for herself. *Id.* ¶¶ 5, 14. Lauren moved to Takoda Trails ICF for long-term care in 2002. *Id.* ¶¶ 6, 15. Takoda Trails ICF receives reimbursements for services provided through the Medicaid program established under the Social Security Act. *Id.* ¶¶ 120, 123. During her stay at Takoda Trails ICF, Lauren's treatment and care was paid for through an IO Waiver by Medicaid. *Id.* ¶ 6. Takoda Trails ICF is also overseen by the Ohio Department of Medicaid and the Ohio Department of Developmental Disabilities ("DODD"). *Id.* ¶¶ 57, 117, 125–26. Both agencies are authorized to inspect, investigate, monitor, and enforce Takoda Trails ICF's compliance with the applicable regulations. *Id.*

About twenty years after Lauren began living at Takoda Trails ICF—and after a significant history of claims of abuse by facility employees alleged by Mr. Carter—the Carters filed suit in state court against Takoda Trails. *Id.* ¶ 27. In the state court complaint, the Carters alleged that Lauren experienced years of "severe abuse and torture" as a resident of Takoda Trails, which worsened over time, to the point that Mr. Carter placed a camera in Lauren's bedroom to monitor staff interactions with Lauren.[5] *Id.* ¶¶ 27, 65. On January 18, 2023, a month or so after filing the state court complaint, Mr. Carter arranged to have an interview conducted in front of Takoda Trails ICF, where Lauren was a resident, by a local television news reporter to discuss the lawsuit he had filed against Takoda Trails. *Id.* ¶¶ 28, 33. During the interview, an administrator at the facility, William Maynard, informed Mr. Carter and the news reporter covering the story that they were not permitted on Takoda Trails ICF

---

[5] On November 30, 2022, Plaintiffs filed the state court lawsuit asserting various torts against Defendants and specifically arguing that Defendants "abuse[d] and torture[d]" Lauren during her time at Takoda Trails ICF. *See* Am. Compl, Doc. 21, ¶ 27. Defendants, however, assert that Plaintiffs voluntarily dismissed the state court lawsuit. Doc. 22, PageID 174 ("Plaintiffs already filed, and have voluntarily dismissed, a civil action against Defendants in the Hamilton County Court of Common Pleas for alleged torts stemming from many of the same allegations they make in this Complaint.").

property. *Id*. ¶ 31. The interview concluded around 1:00 p.m. that day (*Id*. ¶ 32), and less than two hours later, Defendant CEO, Kurt Miller, emailed a Notice of Discharge letter to Mr. Carter, which states, in relevant part:

> Pursuant to Ohio Department of Developmental Disabilities (DODD) rule 5123-3-05 *Licensed Residential Facilities – transfer and termination of services* I am writing to inform you that Empowering People - Takoda Trails is issuing a 30 day notice of discharge for Lauren Carter. The effective date of this discharge will be Friday[,]February 17, 2023. . . *Due to your actions* as Lauren's legal guardian the home can no longer meet the needs of Lauren *without imposing an undue hardship upon the home*. Takoda Trails has attempted to communicate with you and continues to serve Lauren after numerous attacks and unfounded accusations.
>
> You may appeal the decision of Empowering People – Takoda Trails to discharge Lauren. Please submit the appeal in writing to Kurt Miller, CEO, at kmiller@empowering-people.net. The written appeal must be submitted no longer than 7 calendar days after the receipt of the notice to discharge. You may contact Disability Right's Ohio (DRO) to assist you in the process . . . .

Pls.' Ex. 1, Doc. 21-1, PageID 170; Am. Compl., Doc. 21, ¶ 39 (emphasis added).

After receiving the letter, Mr. Carter sought to take matters into his own hands regarding Lauren's impending discharge from Takoda Trails ICF. Around January 25, 2023, he emailed the Butler County Board of Developmental Disabilities ("BCBDD") and DODD requesting a summary of the reasons for Lauren's discharge from Takoda Trails ICF. *Id*. ¶¶ 65–66. The same day, Jennifer Rice ("Ms. Rice"), an official at BCBDD, responded as follows:

> I am unable to respond or explain the reasons behind the notice given to you by [Takoda Trails]. They will have to answer those questions for you. *Appealing their decision to provide notice is also an option to get the answers to those questions . . . [w]e do not have record of this.*

*Id*. ¶¶ 67, 69 (emphasis added).

Thereafter, DODD's Director Nash sent Mr. Carter an email stating, "[i]f you [Mr. Carter] choose to appeal and the record comes to us, we will review and determine if the

4

provider followed the appropriate steps." *Id*. ¶ 74. The next day, during a phone call with Mr. Carter, Ms. Rice allegedly clarified that his "actions" were the reasons for Lauren's discharge, specifically because he had "weaponized the camera in [Lauren's] room, and spoke to the media." *Id*. ¶ 111. Following Mr. Carter's receipt of the Notice of Discharge letter, on January 25, 2023, he also received a list of licensed facilities in the area from DODD where Lauren could potentially be placed. *Id*. ¶ 175. Eight of the nine facilities listed, however, were owned by Empowering People, Inc., another one of the named Defendants in this action. *Id*. ¶ 176. On February 17, 2023, CEO Kurt Miller sent the Notice of Discharge letter to Mr. Carter, which as a result of Lauren's discharge from Takoda Trails ICF, "led to tremendous consequences for Lauren and her family," as they struggled to find another ICF in the area that could meet Lauren's needs. *Id*. ¶¶ 177–79.

Plaintiffs initiated this action on January 17, 2025. Compl., Doc. 1. Subsequently, the Carters filed an Amended Complaint on April 14, 2025 (Am. Compl., Doc. 21), asserting claims under 42 U.S.C. § 1983 and 42 U.S.C. § 3604 of the Fair Housing Act.[6] For the § 1983 claims, Plaintiffs assert that Defendants, acting under color of state law, violated their constitutional rights under the First and Fourteenth Amendments when Defendants issued

---

[6]  Plaintiffs assert the following claims against Defendants in the Amended Complaint: Count I: 42 U.S.C. § 1983 (First Amendment Retaliation) (Issuance of notice of discharge for speaking with media); Count II: 42 U.S.C. § 1983 (First Amendment Retaliation) (Eviction for speaking with the media); Count III: 42 U.S.C. § 1983 (First Amendment Retaliation) (Termination and abandonment of services for speaking with the media); Count IV: 42 U.S.C. § 1983 (First Amendment Right to Petition for Redress) (Termination and abandonment of services for filing a state lawsuit); Count V: 42 U.S.C. § 1983 (First Amendment Petition Clause) (Issuance of notice of discharge for filing a state lawsuit); Count VI: 42 U.S.C. § 1983 (First Amendment Petition Clause) (Eviction for filing a state lawsuit); Count VII: 42 U.S.C. § 1983 (Fourteenth Amendment Due Process); Count VIII: 42 U.S.C. § 3604 (Fair Housing Act) (Failure to Accommodate); Count IX: 42 U.S.C. § 1983 (*Monell* liability against the corporate defendants as to causes of action one through eight). The Court notes that Plaintiffs also referred to the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act (*see* Am. Compl., Doc. 21, ¶¶ 1, 156, 345) in the Amended Complaint without, however, including the claims under one of the counts or providing more details as to the requested relief. *See infra* Part III.2.c.

the Notice of Discharge letter and subsequently evicted and terminated "the Medicaid Waiver services [Lauren] was entitled to" following Mr. Carter's news interview. Am. Compl., Doc. 21, ¶¶ 173, 227. Plaintiffs further contend that Defendants are state actors and "acted under color of [state] law" during the events in question because of the "extensive regulation" the government exercises over licensed ICF's and Medicaid services. *Id.* ¶¶ 7, 116. In connection with Plaintiffs' failure to accommodate claim under the Fair Housing Act ("FHA"), the Carters assert Defendants were legally required to accommodate Lauren's stay under the FHA, and that Defendants failed to do so by abruptly discharging her 30 days after emailing the notice from Takoda Trails ICF. *Id.* ¶¶ 329, 331, 334.

On April 28, 2025, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 22), asserting that Defendants, as "nongovernmental, privately owned disability home and its affiliates," are not state actors subject to liability for constitutional claims. Doc. 22, PageID 173. With respect to Plaintiffs' FHA claim, Defendants assert that Plaintiffs cannot establish that Lauren was discriminated against "because of" her disability and further contend that Plaintiffs failed to identify any requests made of them asking for an accommodation that Defendants allegedly failed to offer. *Id.* at PageID 180–83. Plaintiffs filed a response (Doc. 26), to which Defendants replied (Doc. 27). The matter is now fully briefed and ripe for resolution.

## II.     STANDARD OF REVIEW

Takoda Trails moves to dismiss the Amended Complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the Amended Complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This,

however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When deciding on a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

### III.    LAW AND ANALYSIS

In the Motion to Dismiss, Defendants assert that Plaintiffs failed to state plausible claims upon which relief can be granted under 42 U.S.C. § 1983 and 42 U.S.C. § 3604 of the FHA. Doc. 22, PageID 172. The Court must now decide whether the factual allegations as alleged in the Amended Complaint, taken together, allow for a reasonable inference that (a) Defendants are state actors subject to liability for constitutional claims, and that (b) Defendants failed to provide "reasonable accommodation" to Lauren in violation of 42 U.S.C. § 3604 of the FHA. *See* Am. Compl., Doc. 21, ¶¶ 154–155, 331. Here, the Court finds as to the first question that it must be answered in the negative, and as to the second question, the answer is in the affirmative under the *Twombly* and *Iqbal* plausibility standards. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

### 1.  Plaintiffs' § 1983 Claims Fail

Take first Plaintiffs' § 1983 claims. Those fail as a matter of law. Under 42 U.S.C. § 1983, the Carters must show that: (a) a person acted under color of state law, and (b) that person deprived them of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Importantly, "[o]nly claims against 'state actors' are eligible for relief under the statute," and Defendants here, are all private actors. *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020). Plaintiffs are correct that in certain instances private parties may be held to constitutional standards. However, those instances are rare indeed and occur only when the private parties' actions can be "fairly attributable to the state." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012).

Citing Supreme Court precedent, the Sixth Circuit has articulated three tests for determining when private parties, such as Defendants, may qualify as state actors: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Unsurprisingly, "[t]he state-action analysis is . . . necessarily 'a normative and fact-bound endeavor.'" *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 780 F. App'x 197, 205 (6th Cir. 2019); *see Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001) ("What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.").

8

Under these circumstances, the Court's inquiry can be summarized as follows: have Plaintiffs plausibly shown that Defendants' actions, as asserted in the Amended Complaint, are "fairly attributable to the state." *Filarsky*, 566 U.S. at 383. For the reasons stated below, the Court finds that Plaintiffs have failed to make an affirmative showing that Defendants, each of whom are private parties, qualify as state actors. The Court considers the relevant state action tests in turn.

   *a.   The Public Function Test*

As an initial matter, the requirements of the public function test are not met here. Citing the First Circuit, the Sixth Circuit appears to have adopted the rule that, "[i]n order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 341 (6th Cir. 2006) (citing *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994)). Rather, for Plaintiffs to satisfy this test, they are required to plausibly show that Takoda Trails exercised authority "traditionally [and] exclusively reserved to the state, such as holding elections or eminent domain." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (quoting *Wolotsky*, 960 F.2d at 1335). Needless to say, this standard is not easily met. *Durante*, 201 F. App'x at 341 ("While many functions have been *traditionally* performed by governments, very few have been *exclusively* reserved to the State . . . Only functions like holding elections, exercising eminent domain, and operating a company owned town fall under this category of state action.") (citations omitted)); *Howell*, 976 F.3d at 752 ("It does not suffice that the state . . . 'exercised the function in the past' or that the 'function serves . . . the public interest in some way' or that the entity charges the State for the service." (citations omitted)).

9

While it is not entirely clear what facts the Carters rely upon in support of their state-action theory, Plaintiffs appear to allege in the Amended Complaint that the public function test has been satisfied here because of broad language that appears in an Ohio statute, in this case, O.R.C. § 2744.01(C)(2)(o). Specifically, Section 2744.01(C)(2)(o) defines "developmental disabilities facilities" generally as a "governmental function" under the statute. *Id.*; *see* Am. Compl., Doc. 21, ¶ 133. Just because the Ohio legislature uses expansive language in Section 2744.01(C)(2)(o), to include within the definition of a "governmental function" developmental disabilities facilities like Takoda Trails ICF, this does not necessarily convert that function into one exclusively reserved to the State.[7] As noted, the requirements of the public function test are not easily met; the standard is high. *Durante*, 201 F. App'x at 341. To plausibly show that a private parties' actions can be "fairly attributable to the state," under the public function test Plaintiffs must do more than simply point to the Ohio statute's expansive definition. A "governmental function" is one that is *exclusively* reserved to government like conducting an election, operating a municipality completely controlled by a private company, or exercising the power of eminent domain.[8] *See Durante*, 201 F. App'x at 341.

---

[7] According to the statute, the term "governmental function" applies to a variety of functions typically overseen by the State, including operating golf courses, bicycle motocross facilities, developmental disabilities facilities, and the catchall, any "function that is for the common good of all citizens of the state." *See* Ohio Rev. Code § 2744.01(C)(1)(b). The term "governmental function" is also "not limited" to those functions enumerated there, which is indicative of the broad scope of the functions intended to be covered by the statute, not all of which are traditionally performed by or exclusively reserved for the government.

[8] It is not uncommon for local governments to delegate certain governmental functions the authority of eminent domain to private entities like developers. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 475 (2005) ("The city council also authorized the [developer] to purchase property or to acquire property by exercising eminent domain in the City's name. § 8–193. The [developer] successfully negotiated the purchase of most of the real estate in the 90–acre area, but its negotiations with petitioners failed. As a consequence, in November 2000, the [the developer] initiated the condemnation proceedings that gave rise to this case.").

Here, Plaintiffs have shown only that the State has statutorily designated developmental disabilities facilities as ones that "serve[] . . . the public interest *in some way.*" *Howell*, 976 F.3d at 752 (emphasis added) (citation omitted); *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007). That factor alone fails to plausibly meet the "stiff test" ordinarily "applied by the Supreme Court." *Wilcher*, 498 F.3d at 519. Indeed, "[m]any functions have been *traditionally* performed by governments, very few have been *exclusively* reserved to the State." *Durante*, 201 F. App'x at 341 (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995) (internal quotations omitted and emphasis added). To state a viable claim under the public function test, then, Plaintiffs must plausibly show that Takoda Trails engaged in a function that is both "traditionally [*and*] exclusively reserved to the state." *Durante*, 201 F. App'x at 341. That they cannot do here.

Under Supreme Court precedent, the public function test historically has not encompassed disability care facilities, as opposed to those areas more closely aligned with traditional governmental functions. *See Nixon v. Condon,* 286 U.S. 73, 88 (1932) (elections are public functions); *Marsh v. Alabama,* 326 U.S. 501, 507 (1946) (company towns are public functions); *Evans v. Newton*, 382 U.S. 296, 300–01 (1966) (municipal parks are public functions). Even when the facts suggest a closer allegiance to those presented in this case, circuit precedent supports the determination reached here. *See Howell*, 976 F.3d at 753 (holding that a private facility for at-risk youth pursuant to a contract with the State, was not a state actor under the public function test); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, No. 06-cv-4899, 2007 WL 1202864, at *5 (E.D.N.Y. Apr. 24, 2007) (finding that a group home for mentally disabled and its employees were not state actors), *aff'd*, 546 F.3d 255 (2d Cir. 2008). In this instance, Plaintiffs have not plausibly demonstrated that Takoda Trails, a

11

private disability facility, is engaged in a function that is both "traditionally [*and*] exclusively reserved to the state" such that they can plausibly satisfy the "stiff test" for public function "applied by the Supreme Court." *Durante*, 201 F. App'x at 341; *Wilcher*, 498 F.3d at 519.

      b.   *The State Compulsion Test*

Resorting to the state compulsion test also does not assist Plaintiffs' cause. Here, Plaintiffs must plausibly show that the State "exercise[d] such coercive power or provide[d] such significant encouragement, either overt or covert, that in law the choice of the private actor [was] deemed to be that of the state." *Lansing*, 202 F.3d at 829 (quoting *Wolotsky*, 960 F.2d at 1335). Plaintiffs make the bald assertion that "the State provided to Defendants significant encouragement," because "the State had actual knowledge" about Lauren's discharge and termination from Takoda Trails but instead of stepping in, the State "sat back and watched as Plaintiffs' constitutional rights were trampled upon." Doc. 26, PageID 191, 200; *see* Am. Compl., Doc. 21, ¶ 151 ("The State knew of the 'actions' which Defendants were referring to in the Notice of Discharge."). According to Plaintiffs, the State's failure to intervene makes it "evident that the State significantly encouraged, or somehow coerced [Takoda Trails ICF], either overtly or covertly, to discharge Lauren Carter and terminate [her] services." Am. Compl., Doc. 21, ¶ 154. But "[m]ore than mere approval or *acquiescence* in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 784 (6th Cir. 2007) (quoting *Wolotsky*, 960 F.2d at 1335) (emphasis added).

The Amended Complaint shows that Mr. Carter received conflicting information from DODD regarding its knowledge of Lauren's discharge. Initially, Ms. Rice stated that the Board had no "record of" the circumstances surrounding Lauren's termination from Takoda

Trails ICF. Am. Compl., Doc. 21, ¶¶ 67, 69. The next day, however, Ms. Rice allegedly changed her tune saying, Mr. Carter's "actions" caused Lauren's discharge because he "weaponized the camera in her room, and spoke to the media." *Id*. ¶ 111. Taking Plaintiffs' factual allegations as true, the Court infers that the State knew about Lauren's termination from Takoda Trails ICF and the underlying reasons for it. *Id*. That still does little to advance Plaintiffs' theory of State coercion. Nothing here suggests that State "officials *coerced* or participated in [Defendants'] decision-making" so much so that the State became responsible for Lauren's discharge from Takoda Trails ICF. *Snodgrass-King*, 780 F. App'x at 205 (emphasis added).

Even when viewing the facts contained in the Amended Complaint in the most generous light, Plaintiffs fail to allege any facts suggesting that the State coerced Takoda Trails ICF into terminating Lauren's residency at the facility. Nothing Plaintiffs have asserted mentions the State, any of its employees, managers, or its CEO Kurt Miller, directly or indirectly pressuring Takoda Trails ICF or participating in the decision to discharge Lauren from the facility. Nor is there anything alleged indicating that the State merely suggested that Takoda Trails ICF should discharge Lauren. In fact, Plaintiffs actually assert the *opposite* in the Amended Complaint. *See* Am. Compl., Doc. 21, ¶ 109 ("[T]he State sat back [*sic*] and watched as Defendants' did what they want[ed] in complete non compliance with the laws and the Constitutions of Ohio and the United States."); *Id*. ¶ 89 ("The State failed yet again to stop Defendants from discharging Lauren and terminating her services, despite possessing specific statutory authority to do so, and in fact, despite being required by law to do so.").

All that is alleged in the Amended Complaint is that Mr. Carter received the Notice of Discharge letter less than two hours after his on-camera interview with the local news outlet.

13

*Id.* ¶ 39. Absent any showing that State officials urged a decision upon Takoda Trails, the only inference that can be drawn from the allegations in the Amended Complaint is that Defendants determined independently to terminate Lauren's stay after witnessing Mr. Carter's television interview. In the context of a motion to dismiss, a district court "need not accept as true legal conclusions or unwarranted factual inferences." *Shelby County,* 220 F.3d at 446. All in all, the facts relied upon by Plaintiffs fail to *plausibly* elevate Takoda Trails ICF's conduct in terminating Lauren's stay at that facility to that of a state actor. Plaintiffs have not satisfied the state compulsion test.

> c. *The Symbiotic Relationship or Nexus Test*

In attempting to demonstrate that Defendants were state actors under the symbiotic relationship or nexus test, Plaintiffs fare no better. To make the case under this test, Plaintiffs would need to show that "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. Said another way, the state and the private actor must sufficiently intertwine and the "ties between" them must be significant. *Jackim v. City of Brooklyn*, No. 1:05-cv-1678, 2007 WL 893868, at *24 (N.D. Ohio Mar. 22, 2007) (citing *Wolotsky*, 960 F.2d at 1335). When applying this test, courts have said that there is "no clear standard for identifying a 'sufficiently close nexus,'" it is inherently a fact-bound inquiry. *Lansing*, 202 F.3d at 830. *See also Wolotsky*, 960 F.2d at 1335; *Wilcher*, 498 F.3d at 520 ("The Supreme Court has cautioned that there is no 'readily applicable formula' for finding such a close nexus."). While it is difficult to discern exactly what Plaintiffs' argument under the symbiotic relationship or nexus test is, the Carters appear to be claiming that the test was

14

satisfied because the State's regulation of Takoda Trails ICF and that facilities' participation in the Medicaid program qualify it as a state actor. *See* Am. Compl., Doc. 21, ¶¶ 116, 120–21.

In dispensing with this argument, the Court need go no further in the analysis than the Supreme Court's decision in *Blum v. Yaretsky*, 457 U.S. 991 (1982). In *Blum*, a class of Medicaid patients filed suit against several nursing homes, alleging that the decision to transfer or discharge patients without notice violated the Fourteenth Amendment. *Id*. at 993. In that case, it was undisputed that New York state provided medical assistance to patients living in skilled nursing facilities and that the nursing homes were reimbursed by the state. *Id*. at 994. The nursing homes were also subject to extensive regulation by the state so much so that New York subsidized the operating and capital costs of the facilities, paid patient medical expenses, and licensed the facilities. *Id*. at 1011. Yet, when the plaintiffs sued alleging that the decision to transfer or discharge patients without notice violated the Fourteenth Amendment, the Supreme Court held that the actions of the nursing homes, private entities, did not qualify as state action. *Id*. at 1004–12. The Court reasoned that the "State [was not] responsible for the decision to discharge or transfer particular patients." *Id*. at 1008.

The Court in *Blum* reaffirmed the well-established principle that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Id*. at 1004 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). Here, Ohio Administrative Code 5123-3-05(C),[9] which governs the handlings of persons at ICFs in the State of Ohio, sets policies and procedures regulating the transfer and termination of disabled persons in intermediate care residential living facilities. Ohio Admin. Code 5123-3-

---

[9] The Ohio Administrative Code section relevant to this discussion provides: "'[T]ermination of services' means an action initiated by an operator to cause a resident to move to another residence that is not under the jurisdiction of the operator . . . '[o]perator' means the entity responsible for management of and provision of services at the residential facility." Ohio Admin. Code 5123-3-05(B)(8), (10).

05(C)(1)(a), cited by Takoda Trails in its Notice of Discharge Letter sent to Mr. Carter (*see* Pls.' Ex. 1, Doc. 21-1, PageID 170), allows for transfer or termination of disabled persons in residential living facilities when "necessary for the resident's welfare and [when] the resident's needs can no longer be met without imposing an undue hardship on the operation of the residential facility." Ohio Admin. Code 5123-3-05(C)(1)(a) (2022). The provisions of the Ohio Administrative Code Plaintiffs rely upon, however, fail to show that "there is a sufficiently close nexus between the state and the challenged action of the regulated entity . . . . " *Wolotsky*, 960 F.2d at 1335.  Residential facilities like Takoda Trails ICF do not automatically become state actors merely because their activities are regulated by the State. Nor can the actions of Takoda Trails ICF "be fairly treated as that of the state itself." *Id.*  The Carters' inability to state facts showing more significant ties between Defendants and the State seriously undercuts their argument. The regulations here place decision making on whether "to terminate, or discharge" residents squarely in the hands of the "residential facility." Ohio Admin. Code 5123-3-05(C)(1)(a) (2022). As was the case in *Blum*, "those regulations themselves do not dictate the decision to discharge or transfer *in a particular case*. Consequently, penalties imposed for violating the regulations add nothing to respondents' claim of state action." *Blum*, 457 U.S. at 1010 (emphasis added).

It is important to note also that Ohio Admin. Code 5123-3-05(C)(1)(a) represents an *after-the-fact* procedural mechanism, as opposed to a mechanism for the State of Ohio to dictate control over *specific* discharge or termination decisions of disabled persons in residential living facilities. The regulations here grant the facility discretion in determining when to "initiate" a termination and to determine when it finds termination "necessary for the resident's welfare." Ohio Admin. Code 5123-3-05(C)(1)(a) (2022). Plaintiffs have not alleged, nor is

16

there anything that plausibly shows that Takoda Trails ICF was subject to any State dictated *pre*-approval processes or procedures *before* Lauren's discharge or termination decision was made. Here, the facts all point to the facility, Takoda Trails ICF, as having the independent authority and discretion to determine when termination of a patient's stay was "necessary" and when a resident imposed an "undue hardship" on the facility. Ohio Admin. Code 5123-3-05(C)(1)(a) (2022). Had it been alleged that the State ordered, directed, or strongly influenced Takoda Trails ICF to terminate Lauren's stay, the case might be different. That is not what Plaintiffs have alleged, however.

Though residents may elect to file an appeal with DODD, Deputy Director Dash made clear in his email to Mr. Carter that, "[i]f you choose to appeal and the record comes to us, we will review and determine if the provider followed the appropriate steps." Am. Compl., Doc. 21, ¶ 74.  This can only be interpreted as an additional showing that Takoda Trails exercised independent judgment, and the State was essentially excluded from the original decision to terminate Lauren from Takoda Trails ICF. *Id*. As in *Blum*, "[t]here is no suggestion that" the decision to discharge Lauren was "influenced in any degree by the State . . . ." *Blum*, 457 U.S. at 1005. Thus, Plaintiffs' allegations fail the symbiotic relationship or nexus test.

For all the reasons provided, Plaintiffs have failed to plausibly show that Defendants are state actors under *Iqbal* and *Twombly*. *Twombly,* 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. Under the circumstances, it cannot "be said that the State is [plausibly] *responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004. Because Plaintiffs are unable to plausibly allege that Defendants, all of whom are private parties, are state actors the Court need not address the second part of the state action test, the focus of which is whether Plaintiffs were deprived of a right, privilege, or immunity secured by the Constitution

17

or laws of the United States. *Lansing*, 202 F.3d at 828 ("It is undisputed that First and Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action . . .").

### 2. Plaintiffs' Fair Housing Act Claim Survives

Unlike the previous claims, Plaintiffs have asserted a viable FHA claim. "It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Amended Complaint asserts that "Defendants have violated the Fair Housing Act because they have denied Plaintiffs reasonable accommodation, based upon Plaintiff Lauren Carter's disability." Am. Compl., Doc. 21, ¶ 335. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The inference drawn here is that Plaintiffs' FHA claim is rooted in Takoda Trails ICF's refusal to address Mr. Carter's many expressed concerns about Lauren's care and treatment over the years and its abrupt decision to discharge her from the facility. *See* Am. Compl., Doc. 21, ¶¶ 42, 65. Defendants counter by asserting that the Carters have failed to meet the causation requirement. Doc. 22, PageID 180–81. In essence, Defendants contend that Lauren was not discriminated against "because of" her disability. *Id*. They also assert that Defendants never received from Plaintiffs any requests for an accommodation. *Id*. at PageID 173.

The FHA, originally enacted to prohibit discrimination on the basis of race, color, religion, and national original, was extended in 1988 to ensure "equal opportunity in housing to individuals with handicaps." *Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 344 (E.D.N.Y. 2005). To state a claim for a violation under the FHA, the Carters must plausibly

18

show that: (1) Lauren suffers from a disability within the meaning of FHA; (2) Defendants knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford "an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) Defendants refused to make the accommodation. *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (citation omitted). In the Amended Complaint, Plaintiffs allege the following:

331. Defendant has failed to make a "reasonable accommodation" under Section 3604 of the FHA. *See* 42 U.S.C. § 3604(f)(3)(B).

332. When the Carters complained to the State the State could have, and should have, relayed this information to the Defendants.

333. *The State was already communicating with the Defendants and knew the reason for the Discharge, because Greg Carter weaponized the camera.*

334. Lauren Carter is disabled and Defendants are required to accommodate this disability.

335. *Defendants have violated the Fair Housing Act because they have denied Plaintiffs reasonable accommodation, based upon Plaintiff Lauren Carter's disability.*

336. The failure to accommodate a person who is disabled, constitutes discrimination against a person in violation of the FHA - 42 U.S.C. § 3604(f)(2), (f)(3)(B) - by discriminating on the basis of handicap in connection with her dwelling.

337. *Defendants were required to reasonably accommodate Lauren and continue to provide her with the services at Takoda Trails.*

338. Instead Defendants discharged Lauren Carter and terminated her Medicaid services, which she was entitled to.

339. Defendants, through their conduct and acts described, violated 42 U.S.C. § 3604(f), by refusing to make reasonable accommodation in its rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiffs, an equal opportunity to use and enjoy the dwelling.

340. To the extent that Defendants argue that there is a requirement to appeal, this requirement impedes reasonable accommodation for her disability and is void.

341. Providing an accommodation to Plaintiffs would not (1) result in substantial physical damage to the property of others; (2) pose an undue financial and administrative burden; or (3) fundamentally alter the nature of Defendants' operations.

342. The accommodation Plaintiff requested does not impose an undue financial and administrative burden on the Defendants, nor does it fundamentally alter the nature of Defendants' operations.

Am. Compl., Doc. 21, ¶¶ 331–42 (emphasis added).

Of the five elements the Circuit identified in *Spencer*, Plaintiffs pled facts showing that Lauren is disabled as defined by the FHA, and that Defendants knew of her disability, vis-à-vis, the first and second elements. *Id*. ¶¶ 6, 13. Indeed, Defendants appear to concede the first and second *Spencer* elements by acknowledging Lauren was disabled with cerebral palsy and cortical blindness based upon Lauren's long-term residency at Takoda Trails ICF. *Id*. ¶ 13; Doc. 22, PageID 175. Therefore, Defendants knew or reasonably should have known of Lauren's disabilities. Consistent with the third *Spencer* element, Defendants charge that Lauren was removed from her residency at Takoda Trails ICF, a provider of "housing and services for the disabled." Doc. 22, PageID 173, 175. The Amended Complaint asserts further that following Lauren's termination from Takoda Trails, Plaintiffs struggled to find a new home for Lauren that could meet her needs. Am. Compl., Doc. 21, ¶¶ 177–79.

This resulted in Lauren living at home with Mr. Carter and his wife in a confined space until Lauren was later removed to Residential Group Homes (*id*. ¶¶ 195–201) where her stay was short lived because of her irregular sleeping patterns. *Id*. Against her will, Lauren ultimately ended up living at Caregivers Independence, a group home in Butler County Ohio. *Id*. *See Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996) ("Congress intended the FHAA to protect the right of handicapped persons to live in the

20

residence of their choice in the community." (quoting *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994)). The Amended Complaint needed to include "only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Here, Plaintiffs have pleaded sufficient facts to show the plausibility of the third *Spencer* element.

The more hotly contested dispute between the parties concerns *Spencer* elements four and five: whether (4) the requested accommodation for Lauren to remain at Takoda Trails ICF was reasonable; and (5) whether Defendants refused to make an accommodation for her stay at that facility. *Spencer*, 415 F. App'x at 621. Based on the averments stated in the Amended Complaint, the immediate problem Plaintiffs face regarding the last two *Spencer* elements are ones that have concerned this Court throughout. Plaintiffs' allegations are cast upon the thinnest of factual predicates and are conclusory. Yet, the law requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. As stated, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. With these concepts in mind, the Court must scrutinize the allegations in the Amended Complaint against the fourth and fifth *Spencer* elements. *See Spencer*, 415 F. App'x at 621.

   a.   *Reasonableness of the Accommodation*

As to the fourth element, Plaintiffs must plausibly show that the requested accommodation was a reasonable one. To establish that, a plaintiff need only show that it "imposes no 'fundamental alteration in the nature of the program' or 'undue financial and

administrative burdens.'" *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002) (quoting *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 410, 412 (1979)). When making this determination, trial courts must "balance the burdens imposed on the defendant by the contemplated accommodation against the benefits to the plaintiff." *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001). In striking that balance, courts consider not only the costs of the accommodation, but also its "functional and administrative aspects." *Davis v. Echo Valley Condo. Ass'n*, 349 F. Supp. 3d 645, 657 (E.D. Mich. 2018) (quoting *Groner*, 250 F.3d at 1044). These are, by nature, fact-intensive inquiries. *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994) ("The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination.").

At this juncture, the Court must only ask whether Plaintiffs have asserted enough factual allegations in the Amended Complaint which allow for an inference that Lauren was denied a reasonable accommodation. They did, but *barely*. While the Court acknowledges that Plaintiffs' assertions in the Amended Complaint will require more factual development as these proceedings progress, the need for more particularized factual detail does not, at this juncture, warrant dismissal. Instead, the allegations presented here warrant a closer look. Viewing the allegations and inferences to be drawn from the Amended Complaint most favorably toward Plaintiffs, the facts suggest that Defendants could have, without incurring substantial administrative expense or organizational disruption, provided Lauren with a reasonable accommodation. Lauren lived as a resident and received care at Takoda Trails for over *twenty* years. Am. Compl., Doc. 21, ¶¶ 6, 15.

As Defendants state, they "are in the business of providing housing and services for the disabled" (Doc. 22, PageID 173), including residents like Lauren who lived at Takoda

Trails ICF since 2002. Am. Compl., Doc. 21, ¶¶ 6, 15. Under the circumstances, Lauren's continued stay plausibly would not have led to a "fundamental alteration in the nature of the program" at Takoda Trails, a facility designed to provide care to disabled persons like Lauren. *Howard*, 276 F.3d at 806 (citation omitted); Am. Compl., Doc. 21, ¶ 341 ("Providing an accommodation to Plaintiffs would not (1) result in substantial physical damage to the property of others; (2) pose an undue financial and administrative burden; or (3) fundamentally alter the nature of [Takoda Trails]' operations."). Nor given her twenty-year tenure at the facility, would Lauren's continued stay have been particularly burdensome or costly from an administrative or physical perspective. Am. Compl., Doc. 21, ¶¶ 6, 15. It is important to note that, "[t]he FHAA imposes an affirmative duty to reasonably accommodate handicapped people" like Lauren. *Smith & Lee Assocs., Inc.*, 102 F.3d at 795 (citation omitted).

As the case progresses the factual record may later reveal that, for example, the costs of Lauren's accommodation request to remain at Takoda Trails ICF were minimal as were the related "functional and administrative" considerations associated with the accommodation request. *Davis*, 349 F. Supp. 3d at 657. These are all questions requiring further factual development. Rather than dismissal at this early stage, under *Twombly*, the better course is for the parties to discover what evidence may be produced later and let the facts play out as to the fourth element under the *Spencer* analysis.

   b.  *Refusal to Make an Accommodation*

As noted, Defendants also assert that they never received any request for an accommodation from Plaintiffs. This impacts the fifth *Spencer* element. *See Spencer*, 415 F. App'x at 621. As the argument goes, Defendants contend that they could not have refused an accommodation if Plaintiffs never properly requested one. *See* Doc. 22, PageID 182 ("Here,

Plaintiffs have not alleged that they requested an accommodation for any handicap or disability—a necessary element to plead an FHA failure-to-accommodate claim. Indeed, Plaintiffs do not allege that they made any request for accommodation *at all*."). The Carters claim, on the other hand, that they requested reasonable accommodation for Lauren by communicating with State officials having regulatory authority over Takoda Trails ICF. Doc. 26, PageID 205 ("[T]he reasonable accommodation request was made to the State via the complaints and communications with the State.").

Importantly, Sixth Circuit authority indicates that a request for an accommodation must be directed to the actual defendants. *See Kooman v. Boulder Bluff Condos*, 833 F. App'x 623, 628 (6th Cir. 2020) ("[T]he decisionmaker must have the opportunity to make a 'final decision' on the request.") (citation omitted); *Id.* ("[A] housing provider must know that an accommodation is necessary in order to become liable for refusing it."). Thus, the Court is concerned based upon Plaintiffs' failure to allege in the Amended Complaint (Doc. 21) that Plaintiffs' request for an accommodation was directed to Takoda Trails, as opposed to State officials alone. As noted, however, the reasonable accommodation analysis is "highly fact-specific." *California Mobile Home Park Mgmt. Co.*, 29 F.3d at 1418. To be certain, the Amended Complaint alleges that immediately after receiving the email from Defendants' CEO, Mr. Carter emailed employees and officers at BCBDD and DODD expressing frustration by contesting Lauren's discharge and stating that Takoda Trails ICF failed to satisfy "the requirements to issue a discharge." Am. Compl., Doc. 21, ¶¶ 66, 75.

As the Court earlier observed, a reasonable inference can be drawn that the State knew about Lauren's termination from Takoda Trails ICF and the underlying reasons for it based upon the conflicting information Mr. Carter received from Ms. Rice. Indeed, the Amended

24

Complaint alleges that at first, Ms. Rice communicated to Mr. Carter that the Board had no "record of" the circumstances surrounding Lauren's termination from Takoda Trails ICF. *Id*. ¶¶ 67, 69. But by the next day, Ms. Rice allegedly told Mr. Carter that his "actions" caused Lauren's discharge because he "weaponized the camera in her room, and spoke to the media," strongly suggesting that information had flowed from the State to Defendants." *Id*. ¶ 111. Defendants' argument falls of its own weight because Defendants did appear to learn about the request for further accommodation for Lauren. Whether Defendants discovered the request for an accommodation directly or indirectly is of no moment so long as Takoda Trails had "the opportunity to make a 'final decision' on the request." *Kooman*, 833 F. App'x at 628 (citation omitted).

Construing the Amended Complaint in the light most favorable to Plaintiffs and accepting all factual allegations as true, as we must, it is quite plausible that State officers and employees shared the emails sent by Mr. Carter or, at the very least, shared their contents to Defendants, considering that the State and Takoda Trails had previously communicated about the underlying facts of Lauren's discharge. Am. Compl., Doc. 21, ¶¶ 67, 69, 111. In fact, Plaintiffs allege in the Amended Complaint that Defendants were in regular communication with officials at BCBDD and DODD. *Id*. ¶ 333 ("The State was already communicating with the Defendants and knew the reason for the Discharge, because Greg Carter weaponized the camera."). As the Third Circuit, in *Phillips v. Cnty. of Allegheny*, stated when discussing plausibility of supporting facts "[t]his 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 556). Under the circumstances,

Plaintiffs have sufficiently pled enough facts to show that they requested a reasonable accommodation or modification from Defendants and that the accommodation related to the "rules, policies, practices, or services" connected with Lauren's residency and predating her discharge from Takoda Trails ICF. 42 U.S.C. § 3604(f)(3)(B).

As to the fifth *Spencer* element, the Amended Complaint also alleges that Defendants refused to make an accommodation to allow Lauren to remain at Takoda Trails. Am. Compl., Doc. 21, ¶ 339. According to Plaintiffs, after receipt of Lauren's termination notice from Takoda Trails and request to State officials that she not be discharged, which was communicated indirectly to Defendants, they struggled to find appropriate housing for her. *Id*. ¶¶ 180–204; *Id*. ¶ 173 ("On February 17, 2023 Defendants discharged Lauren Carter from Takoda Trails, terminated the Medicaid Waiver services she was entitled to, and abandoned their legal obligation to provide Medicaid funded services."); *Id*. ¶ 174 ('On February 17, 2023 the State allowed Defendants to discharge Lauren Carter from Takoda Trails, terminated the Medicaid Waiver services she was entitled to, and abandoned its legal obligation to ensure that the discharge of Lauren Carter, and the termination of her services, is in compliance with the law.").

At this stage, based on the facts alleged in the Amended Complaint and the earlier discussion in this Opinion related to the fourth *Spencer* element alone, Plaintiffs have pled enough facts to show that the fifth *Spencer* element—Defendants refused to make the accommodation—is "plausible on its face." *Twombly,* 550 U.S. at 570.

   c.   *Plaintiffs' Americans with Disabilities Act / Section 504 Claims*

Finally, in the Amended Complaint, Plaintiffs ask the Court to render relief to Plaintiffs under the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the

Rehabilitation Act (*see* Am. Compl., Doc. 21, ¶¶ 1, 156, 345) ("Section 504"). Here, again, Plaintiffs make only passing references to the ADA or Section 504 claims without including them under one of the counts in the Amended Complaint or offering much by way of facts to support either. Defendants contend that because no supporting facts are averred, Plaintiffs' assertion that they violated the ADA and Section 504 must fail. Doc. 22, PageID 174 n.1. Importantly, however, claims asserted by plaintiffs suing under the FHA, the ADA, and Section 504 can be reviewed applying the same legal principles. *See Groner,* 250 F.3d at 1044 ("Because the Fair Housing Act adopted the concept of a 'reasonable accommodation' from § 504 of the Rehabilitation Act, 29 U.S.C. § 791, cases interpreting that term under the Rehabilitation Act also apply to claims under the Fair Housing Act."); *Doe v. Salvation Army in U.S.*, 531 F.3d 355, 357 (6th Cir. 2008) ("We review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act of 1990."); 148 A.L.R. Fed. 1 ("Since the Fair Housing Act, ADA, and the Rehabilitation Act offer the same guarantee that a covered entity . . . must provide reasonable accommodations . . . analysis of a reasonable accommodation claim under the three statutes is treated the same.").

The difference between claims asserted under Section 504, ADA, and FHA, is that the former applies only to programs or activities receiving federal assistance. *See* 29 U.S.C. § 794. Here, Takoda Trails receives federal financial assistance through the Medicaid program.[10]

---

[10]   Here, Plaintiffs have plausibly asserted elements of a cause of action under Section 504: (1) Lauren is a "handicapped person" who was (2) "otherwise qualified" for participation in the program at Takoda Trails as she lived there for over twenty years (Am. Compl., Doc. 21, ¶¶ 13, 15); (3) Lauren was excluded from participation in, or denied the benefits of, remaining at Takoda Trails based upon the Notice of Discharge letter, which she asserts was solely by reason of her handicap; and (4) Takoda Trails receives federal financial assistance through the Medicaid program. *See* 29 U.S.C. § 794; Am. Compl., Doc. 21, ¶¶ 35, 120, 335. *See Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

27

Am. Compl., Doc. 21, ¶¶ 120, 123. And as noted, "[t]he requirements for reasonable accommodation under the ADA are the same as those under the FHA." *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-3090, 2021 WL 5411220, at \*6 (6th Cir. Nov. 19, 2021) ("[A] plaintiff must prove that (1) she suffers from a disability . . . ; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable, and (5) the defendant refused to make the accommodation."). Under these circumstances, the Court declines to dismiss Plaintiffs' Section 504/ADA claims but notes that they too will require further factual development as the case progresses in order to remain viable.

## IV.    CONCLUSION

For all the reasons stated, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims filed pursuant to 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE**, while Plaintiffs' claims pursuant to the FHA, ADA, and Section 504, for now, may **PROCEED**.

**IT IS SO ORDERED.**

May 5, 2026

Jeffery P. Hopkins
United States District Judge

28